```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
STACEY MENDEZ-CATON and                          :
ALISTER CATON,                                   :
                                                 :
                                                 :
                         Plaintiffs,             :          MEMORADUM & ORDER
                -against-                        :          19-cv-1599 (DLI)(TAM)
                                                 :
UNITED STATES OF AMERICA,                        :
NYU LANGONE HEALTH, and                          :
JENNA SILVERSTEIN, M.D.,                         :
                                                 :
                         Defendants.             :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

This medical malpractice action, resulting from alleged negligence in the provision of post-partum care, is before the Court pursuant to 28 U.S.C. § 2675 and 28 U.S.C. § 1346. Am. Compl., Dkt. Entry No. 75. The parties certified the close of discovery on March 31, 2022. Joint Letter Certifying the Close of Discovery, Dkt. Entry No. 58. Before the Court are the parties' cross-motions *in limine*, seeking to preclude the testimony of expert witnesses pursuant to Fed. R. of Evidence 702 ("Rule 702").

Stacey Mendez-Caton and Alister Caton ("Plaintiffs") move to preclude the testimony of the United States of America's (the "Government") medical expert, Dr. Ifath Hoskins, as well as the testimony of NYU Langone Health's and Dr. Jenna Silverstein's ("NYU Defendants") medical expert, Dr. Thomasina Ellison. *See*, Pls.' Mot. in Lim. ("Pls.' MIL"), Dkt. Entry No. 118-2. The Government and NYU Defendants each oppose Plaintiffs' motion. *See*, USA Opp'n to Pls.' MIL ("USA Opp'n"), Dkt. Entry No. 120; NYU Defs.' Opp'n to Pls.' MIL ("NYU Opp'n"), Dkt. Entry No. 119. Plaintiffs replied to each opposition. *See*, Pls.' Reply to NYU ("Reply to NYU"), Dkt. Entry No. 121-1; Pls.' Reply to USA Opp'n ("Reply to USA"), Dkt. Entry No. 121-2.

The Government and NYU Defendants each move to preclude the testimony of Plaintiffs'

expert witness, Dr. Burt Greenburg. *See*, USA Mot. in Lim. ("USA MIL"), Dkt. Entry No. 122; NYU Mot. in Lim. ("NYU MIL"), Dkt. Entry No. 125. Plaintiffs opposed both motions. *See*, Pls.' Opp'n to USA MIL ("Pls.' USA Opp'n"), Dkt. Entry No. 124; Pls.' Opp'n to NYU MIL ("Pls.' NYU Opp'n"); Dkt. Entry No. 128. The Government and NYU Defendants replied in support of their respective motions. *See*, USA Reply in Supp. of USA MIL ("USA Reply"), Dkt. Entry No. 129; NYU Reply in Supp. of NYU MIL ("NYU Reply"), Dkt. Entry No. 126.

## BACKGROUND

On September 5, 2017, Stacey Mendez-Caton ("Mendez-Caton") was admitted to NYU Langone Health/LM located at 150 55th Street, Brooklyn, New York pregnant and in labor. Am. Compl. at ¶ 14. After giving birth by Caesarean section, Mendez-Caton suffered an injury to her skin during post-partum care. *Id.* As Jenna Silverstein, M.D. ("Dr. Silverstein"), the resident-in-charge, attempted to remove the dressing tape that was applied to her skin, "she removed much of the skin with the tape." *Id.*

Plaintiffs filed this action asserting negligence in the medical care Mendez-Caton received. *Id.* at ¶¶ 15-18. Plaintiffs also make claim for loss of consortium. *Id.* at ¶¶ 19-21. Plaintiffs allege that Mendez-Caton's "permanent and severe injuries," including scarring, resulted from Defendants' failure to adhere to appropriate standards of care, failure to provide sufficient post-partum care, failure to listen to Mendez-Caton's statements of pain and injury, and failure to consult with specialists prior to proceeding. *Id.* at ¶¶ 16-17.

## LEGAL STANDARD

Federal Rule of Evidence 104(a) provides that the admissibility of expert testimony is a preliminary question of law for the court to determine. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). The proponent of the testimony bears the burden of demonstrating its

admissibility by a preponderance of the evidence.  *See*, *Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F. Supp.2d 334, 349 (S.D.N.Y. Aug. 11, 2005) (citations omitted).

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.  *See*, *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).  Rule 702 sets forth a three-step inquiry to determine whether the testimony of a party's proffered expert should be deemed admissible.  First, the court must review the relevance of the proposed expert's testimony to determine whether the conclusions it draws will aid the factfinder in answering the questions at issue in the case.  *Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F. Supp.2d 334, 350 (S.D.N.Y. Aug. 11, 2005).  Second, the court must investigate the expert's compliance with the provision of Fed. R. Evid. 702 that requires an expert to be "qualified as an expert by knowledge, skill, experience, training, or education."  *Nimely*, 414 F.3d at 395 n. 11.

Finally, the court must consider whether the testimony is reliable.  To be reliable, expert testimony must be based on sufficient facts or data, and it must be the product of reliable, properly applied principles or methodology.  "[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable. . . . [t]he evidentiary requirement of reliability is lower than the merits standard of correctness.'"  Advisory Committee Note to the 2000 amendment to Rule 702, quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994).

## **DISCUSSION**

As an initial matter, it is helpful to clarify on which issues in this case a medical expert's testimony is needed to aid the factfinder, and, therefore, what type of expertise a proposed expert should possess.  From this common foundation, evaluation of each proposed expert's qualifications and proffered testimony can proceed.

3

Under New York Law, medical malpractice requires a showing of three elements: (1) the standard of care in the locality where the treatment occurred; (2) that the defendants breached that standard of care; and (3) that the breach of the standard was the proximate cause of injury." In most cases, each element "must be established by expert medical opinion." *Urena v. Yan Wolfson, M.D.*, 2012 WL 958529, at *4 (E.D.N.Y. Mar. 20, 2012) (citing *Hogan v. A.O. Fox Mem. Hosp.*, 346 F. App'x 627, 630 (2d Cir. 2009) (summary order)). "[I]t is well-established that each element [of medical malpractice] must be established by expert medical opinion unless the deviation from a proper standard of care is so obvious as to be within the understanding of an ordinary layperson." *Kawache v. United States*, 2011 WL 441684, at *14 (E.D.N.Y. Feb. 7, 2011), aff'd, 471 F. App'x 10 (2d Cir. 2012) (citing *Sitts v. United States*, 811 F.2d at 739–40 (2d Cir. 1987)).

Here, the malpractice Plaintiffs complain of is Defendants' failure to adhere to the standard of care in the post-surgical use (including removal) of surgical bandages and tape following Mendez-Caton's Cesarean section. Am. Compl. at ¶¶ 14, 16. Therefore, the relevant expertise is knowledge of the standard of care in the post-surgical use of these surgical bandages and tape in September 2017. While experience with the use of surgical bandages and tape specifically following a Cesarean section would be most directly on point and, thus, perhaps given more weight by the finder of fact, this does not serve to preclude testimony by an expert who has extensive experience with their use in other post-surgical contexts. *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp.2d 230, 282 (E.D.N.Y. 2007) ("Assertions that the witness lacks particular educational or other experiential background, go to the weight, not the admissibility, of [the] testimony." (quotations omitted)).

4

## I. Defendants' Medical Experts

Plaintiffs move to preclude the testimony of the Government's medical expert, Dr. Ifath Hoskins ("Dr. Hoskins") and NYU Defendants' medical expert Dr. Thomasina Ellison ("Dr. Ellison"). *See*, Pls.' MIL.

### A. Dr. Hoskins

Dr. Hoskins is the Director of Safety and Quality, in the Department of Obstetrics and Gynecology ("OB/GYN") at the NYU School of Medicine. USA Opp'n, Ex. B, Curriculum Vitae ("CV") of Dr. Hoskins ("Hoskins CV"), Dkt Entry No. 120-3. Dr. Hoskins reviewed medical records, testimony and other evidence to produce a report and opinion as to whether Defendants departed from the acceptable standard of care in their treatment of Mendez-Caton following her Cesarean section. Hoskins Decl. Ex. B ("Hoskins 2d Rep.") at 1, Dkt. Entry No. 122-10.

Dr. Hoskins begins her report by describing the conditions of pregnancy that led to Mendez-Caton's Cesarean section and her surgical medical history. *Id.* at 2. She then discusses the surgery and the treatment following thereafter. *Id.* In detail, she describes the attempts to remove the surgical dressing and the ultimate removal of the dressing. *Id.* She then summarizes the remainder of the post-operative treatment as uneventful and proceeds to provide her opinions. *Id.* at 3. Finally, she provides her opinion and conclusions. *Id.* at 3-4.

In sum, her opinion is that the post-operative treatment of Mendez-Caton did not deviate from the standard of care. *Id*. She also explicitly contradicts some of Plaintiffs' expert's opinions and conclusions. *Id*. Thus, her opinion is directly relevant to the issue of establishing the standard of care and any departure or lack of departure from it. The Court concludes that Dr. Hoskins' conclusions and opinion will aid the factfinder in determining key issues in this case.

Plaintiffs argue that the Court should preclude Dr. Hoskins from testifying because of bias resulting from her employment with Defendants, her alleged attempt to create confusion through

5

inaccuracies in her report, and her unfamiliarity with Medical Adhesive Related Skin Injury ("MARSI") and the standard of care applicable in this case. Pls.' MIL at 2, 13, 17, 19. The Government counters that any potential bias of Dr. Hoskins does not affect the admissibility of the testimony, only its weight, any inaccuracies in her initial report were unintentional and corrected in her second report, and Dr. Hoskins has the relevant experience and qualifications to testify as an expert in this case. USA Opp'n at 3-5, 10-11, 6-9.

### 1. Dr. Hoskin's Qualifications

Plaintiffs concede that Dr. Hoskins has extensive experience in OB/GYN. Pls.' MIL at 9-10. However, Plaintiffs argue that this case is about skin injuries rather than OB/GYN care, and Dr. Hoskins lacks expertise in this area. *Id.*

Based on Dr. Hoskins' CV provided by the Government, the Court finds that Dr. Hoskins is qualified as an expert in OB/GYN: (1) Dr. Hoskins is a Fellow of the American College of Obstetricians and Gynecologists and the American College of Surgeons; (2) she is a board certified OB/GYN, with a specialization in Maternal Fetal medicine; (3) she was a resident in OB/GYN at the National Naval Medical Center from 1979-1982; (4) beginning in 1985 through today she has been a practicing doctor in OB/GYN; (5) and since 1983 she has retained various faculty appointments in OB/GYN. Of particular relevance to this case, Dr. Hoskins has extensive experience in Cesarean sections, having performed several hundred in her career and has spent 35 years supervising and training OB/GYN residents in performing surgeries and managing patients post-operation. Hoskins 2d Rep. at 1.

However, Plaintiffs argue that Dr. Hoskins' OB/GYN expertise in is not relevant to the injuries in the case because she testified that she has no experience with the injury causing instrumentality and lacks relevant knowledge or experience to opine on post-surgical injuries or use of silk surgical tape. Pls.' MIL at 2-3, 11-12. Plaintiffs specifically identify as problematic

6

Dr. Hoskins' testimony that she was unfamiliar with MARSI. *Id*. These arguments are unavailing.

As discussed above, Dr. Hoskins has extensive experience with medical care following Cesarean sections, including the use of post-operative bandages and tape. Additionally, Dr. Hoskins testified that she has experience with similar situations involving skin irritation or reactions to post-operative adhesives. Depo. Trans. of Dr. Hoskins ("Hoskins Depo.") at 16-18, Dkt. Entry No. 120-2. With regard to her unfamiliarity with MARSI, her testimony merely shows that she was unfamiliar with a specific acronym. This does not outweigh the evidence presented of Dr. Hoskins' extensive training and experience.

### 2. **Reliability**

Plaintiffs do not challenge the reliability of Dr. Hoskins' application of her expertise to the facts of the case. *See*, Pls. MIL. After reviewing her report and testimony, the Court is satisfied that her conclusions are reliable. In addition to explaining the reasons for her conclusions in her report, Dr. Hoskins testified extensively regarding the rationale for her conclusions. *See generally*, Hoskins Depo. The injuries suffered by Mendez-Caton allegedly resulted from the use of surgical dressings and tape following a Cesarean section. Am. Compl. at ¶¶ 14, 16. As discussed above, Dr. Hoskins has extensive experience with medical care following Cesarean sections. Her report and testimony adequately demonstrate that she applied her expertise in a reliable manner to the pertinent facts and data of the case. Therefore, the Court finds that Dr. Hoskins' testimony meets the requirements of Rule 702.

### 3. **Bias**

Plaintiffs assert that Dr. Hoskins is biased in favor of Defendants as a result of her employment at NYU. Pls.' MIL at 10-11. They maintain that, in her various roles, Dr. Hoskins had personal involvement with patient treatment at the treating location in this case, wrote protocols that Mendez-Caton's treating physicians would have followed, and has ongoing access

7

to privileged documents and information regarding this case. *Id*. Even assuming Plaintiffs' contentions are true, they do not show that she is in essence "the defendant hospital," as Plaintiffs argue. *Id*. at 11. Rather, these arguments simply go to the weight and credibility of her testimony.

First, any meaningful working association Dr. Hoskins had with the hospital that treated Mendez-Caton had long since concluded at the time of Mendez-Caton's treatment. *See*, Hoskins CV; Hoskins Depo. at 11-12. Dr. Hoskins' CV shows that she has not worked at that location since 2012 and she testified that her contacts in the intervening years have been minimal. Hoskins CV; Hoskins Depo. at 11-12. Furthermore, Dr. Hoskins testified that she had no role in patient safety at the location that treated Mendez-Caton. Hoskins Depo. at 13; 18-19.

Second, Plaintiffs' assertion that the Court should preclude Dr. Hoskins testimony because she was one author of a Cesarian birth protocol used by NYU Langone similarly is unavailing. *See*, Pls.' MIL at 10. Instead of disqualifying her, this further supports her expertise in the field of OB/GYN. Third, even if Dr. Hoskins could review privileged documents, as Plaintiffs argue, Plaintiffs do not establish that she did here. *Id.* at 10-11.

As a result, Plaintiffs have not established that Dr. Hoskin's potential bias renders her unable to testify. Plaintiffs may explore this potential bias on cross-examination. *See*, *Hasemann v. Gerber Prod. Co.*, 2024 WL 1282368, at *7 (E.D.N.Y. Mar. 25, 2024) (argument that a proffered expert witness is an interested witness may be raised on cross-examination).

### 4. Report Inaccuracies

Plaintiffs do not provide any support for their proposition that Dr. Hoskins intentionally inserted errors in her report to confuse the trier of fact. *See*, Pls.' MIL at 4. Plaintiffs argue that the Dr. Hoskins testified that the standard of care was to remove the tape and dressing on post-operative day one and that she misstated that Mendez-Caton's bandages were removed post-operative day one when, in fact, they were removed on day two. *Id*. at 4. Nor do Plaintiffs explain

how this error was not cured by Dr. Hoskins' correction of the error in her second report. *See*, Hoskins 2d Rep.

In sum, Plaintiffs' arguments for preclusion of Dr. Hoskins' testimony are unavailing. The Court finds that the preponderance of the evidence demonstrates that Dr. Hoskins is qualified to testify and that her opinion is the result of reliable application of her expertise. Plaintiffs' motion to preclude Dr. Hoskins' testimony is denied.

### B. Dr. Ellison

Dr. Ellison is a Faculty Attending Physician and Associate Director of Benign Gynecology at Maimonides Medical Center in Brooklyn, NY. Pls.' MIL Ex. G, CV of Dr. Ellison ("Ellison CV"), Dkt. Entry No. 118-5. Dr. Ellison reviewed the file materials, including medical records, testimony and other evidence, relating to the treatment of Mendez-Caton following her Cesarean section and provided an opinion as to whether Defendants departed from the acceptable standard of care. NYU Opp'n Ex. A Report of Dr. Ellison ("Ellison Rep."), Dkt. Entry No. 119

Dr. Ellison begins her report by summarizing Mendez-Caton's relevant medical history and the reasons for her Cesarean section on September 5, 2017. *Id.* She then describes the treatment following the Cesarean section, including a detailed description of the process of removal of the medical dressing covering the incision site. *Id.* at 2. Ultimately, Dr. Ellison opines that Defendants did not deviate from accepted standards of care in their post-operative treatment of Mendez-Caton. *Id.* at 2-3. Her opinion is directly relevant to the issue of establishing the standard of care and Defendants' adherence to this standard. The Court finds that Dr. Ellison's conclusions and opinion will aid the factfinder in determination of the ultimate issues in this case.

Plaintiffs argue that the Court should preclude Dr. Ellison's testimony because she is unfamiliar with skin related injuries and the type of tape adhesive used to treat Mendez-Caton, and her conclusions are disconnected from the facts of the case. Pls.' MIL at 14-21. The NYU

Defendants counter that Dr. Ellison is qualified to testify because she has extensive training and experience in the relevant fields and that the conclusions of her report and proposed testimony are well supported by the facts of this case. NYU Opp'n at 1, 8-9.

### 1. Dr. Ellison's Qualifications

Plaintiffs acknowledge that Dr. Ellison is a "well credentialed physician within the specialty of Obstetrics and Gynecology." Pls.' MIL at 3. However, Plaintiffs argue that she is not an expert in skin injuries and should not be allowed to testify. *Id*.

Based on the CV provided for Dr. Ellison, the Court finds that Dr. Ellison is qualified. *See*, Ellison CV. Specifically, Dr. Ellison's CV shows that she: (1) is board certified as an OB/GYN; (2) graduated medical school in 1988; (3) was a resident at SUNY-Downstate in the Department of Obstetrics and Gynecology from 1988 to 1992 and was the chief resident from 1991-1992; (4) has been employed as a OB/GYN physician at various hospitals since 1992; and (5) she has served as a Professor of OB/GYN at various universities since 1992. *Id.*

Despite these qualifications, Plaintiffs argue that Dr. Ellison's opinion on skin injuries should be precluded because she testified in her deposition that she is unfamiliar with MARSI, the rule of nines, and the classification of skin injuries. Pls.' MIL at 14-19 (citing Ex. B to NYU Opp'n, Ellison Depo. Trans. ("Ellison Depo.") at 43, Dkt. Entry No. 119). However, the NYU Defendants counter, and Plaintiffs do not dispute, that MARSI is a term used in an article in a nursing journal, which was not disclosed in advance of Dr. Ellison's deposition, not subject to peer review, and sponsored by a surgical tape company. NYU Opp'n at 3, Reply to NYU. At most, Plaintiffs have demonstrated Dr. Ellison's lack of familiarity with this acronym. Without more,

10

this does little to undermine Dr. Ellison's extensive experience with treatment following Cesarean sections and ability to testify as an expert.

Plaintiffs also fail to demonstrate why Dr. Ellison's lack of familiarity with the "rule of nines" supports excluding her testimony. NYU Defendants assert that the rule of nines is used for burn victims. NYU Opp'n at 3. In their reply, Plaintiffs do not challenge this assertion or explain how the rule of nines is applicable in this case, which does not involve burns. *See*, Reply to NYU.

Similarly, Dr. Ellison's statement that she "would not" classify Mendez-Caton's injuries, is inadequate to serve as a basis to exclude her testimony. *See*, Ellison Depo. at 54. In context, Dr. Ellison's statement is simply her assertion that she would not classify the injuries because either they were not severe enough to warrant classification or she could not do so based on the images shown. As a result, this statement does not provide warrant preclusion of Dr. Ellison's testimony.

### 2. Reliability

Plaintiffs maintain that Dr. Ellison's opinion that an allergic reaction caused Mendez-Caton's injuries must be precluded because it lacks factual support and Dr. Ellison is not trained in the field of allergens and is not an allergist. Pls.' MIL at 6-7. NYU Defendants counter that Dr. Ellison's opinion is based on the reliable application of her experience and expertise to the facts of this case. NYU Opp'n at 6.

Dr. Ellison testified that her opinion and conclusions were based on her nearly thirty years of clinical experience and her review of the file materials. Ellison Depo. at 86-87, 25. The file materials included the summons and complaint in both the state action and the federal court action, the bill of particulars served in the state court action, records of NYU Lutheran Medical Center, records of the Caribbean-American Family Health Center, photographs taken by Mendez-Caton, photographs taken of Mendez-Caton, report of William Rosenblatt, M.D., and transcripts of the

deposition testimony of Mendez-Caton, Alister Caton, Jenna Silverstein, M.D., Raisa Ibragimov, M.D., Gail Besson, M.D., Sam Shahem, and Erika Ryan, M.D.  Report of Thomasena Ellison ("Ellison Report"), Dkt. Entry No. 94-25.  Dr. Ellison testified that she has seen skin reactions like those suffered by Mendez-Canton in rare instances.  Ellison Depo. at 86-87.

This testimony adequately demonstrates that she applied her expertise in a reliable manner to the pertinent facts and data of the case. Therefore, the Court finds that Dr. Ellison's testimony meets the requirements of Rule 702.  Plaintiffs' motion to preclude Dr. Ellison's testimony is denied.

## II.    Plaintiff's Medical Expert

Dr. Burt Greenberg ("Dr. Greenberg") is a board-certified plastic surgeon with his own private practice in New York.  Depo. Trans. of Dr. Greenberg at 10-11. ("Greenberg Depo."), Dkt. Entry No. 52-1.  Dr. Greenberg was asked to review the medical records, testimony and other evidence in this case, as well as perform an examination of Mendez-Caton in order to provide a report and opinion as to whether Defendants departed from the acceptable standard of care in their treatment of Mendez-Caton following her Cesarean section.  Second Rep. of Dr. Greenberg ("Greenberg 2d Rep.") at 6, Dkt. Entry No. 42.

Dr. Greenberg begins his report by discussing the testimony of Dr. Besson regarding Mendez-Caton's post-Cesarean section treatment.  *Id.* at 7.  He next describes the attempts to remove the tape and the ultimately successful removal of the tape and bandage.  *Id.*  He also provides details regarding the amount of skin that was removed and discrepancies between the notes of the attending physician, Dr. Shahem, and the measurements of the resident-in-charge, Dr. Jenna Silverstein.  *Id.*  Dr. Greenberg describes his examination of Mendez-Caton and his measurements of the scarred areas.  *Id.* at 7-8.  Finally, Dr. Greenberg provides his opinion and conclusions regarding the medical treatment received by Mendez-Caton.  *Id.* at 8-9.

12

In sum, Dr. Greenberg's opinion is that Mendez-Caton's injuries were the result of Defendants' departure from the standard of care in specific areas. *Id.* at 8-9. He also discusses the areas of his disagreement with Defendants' experts' opinions. *Id.* at 9. Thus, his opinion is directly relevant to the issue of establishing the standard of care and whether Defendants departed from this standard. As a result, the Court concludes that Dr. Greenberg's conclusions and opinion will aid the factfinder in determining key issues in this case.

However, the Government and NYU Defendants both seek to preclude Dr. Greenberg's testimony because he lacks relevant expertise to testify and his opinion is not the result of reliably applied principles and methods to the facts of this case. Plaintiffs counter that Dr. Greenberg's experience and training as a plastic surgeon provides sufficient expertise to allow him to testify as an expert in this case and that he reliably applied his expertise to the facts of this case.

### 1. **Dr. Greenberg's Qualifications**

Defendants argue that Dr. Greenberg should be precluded from testifying because he is a plastic surgeon and he lacks training, knowledge, and experience in OB/GYN to testify as to the standard of care in this case. USA MIL at 9-11; NYU MIL at 8-12. Plaintiffs counter that Dr. Greenberg is an expert in plastic surgery and, thus, is qualified to opine on the treatment of skin injuries. Pls. Opp'n at 5-8. Plaintiffs contend that this is appropriate because the Amended Complaint alleges that the injuries resulted from the care and treatment of a wound. *Id.* at 6.

Based on Dr. Greenberg's CV and his deposition testimony, the Court finds that Dr. Greenberg is qualified to testify. Dr. Greenberg: (1) is a board-certified plastic surgeon with more than forty years of experience; (2) teaches residents and medical students from Hofstra Medical School and Northwell Hospital; (3) previously was board-certified in general surgery; (4) regularly performs surgical procedures; (5) has served as an expert in plastic surgery in other cases; and (6) regularly uses postsurgical skin adhesives. *See*, Greenberg Depo. at 10-23. Dr. Greenberg testified

13

that he was prepared to offer an expert opinion "on the management of the skin tear injury." Greenberg Depo. at 13-14. More specifically, he would offer an opinion on the use of postsurgical skin adhesives, which he stated he uses "every single day" and has forty years of experience with. *Id.* at 15-16.

Defendants do not dispute that Dr. Greenberg is an expert in plastic surgery. *See*, USA MIL at 10; NYU MIL at 8. Instead, they contend that his expertise is not relevant in this case because he is not an expert in OB/GYN surgery or medicine. USA MIL at 10-11; NYU MIL at 8-12. In response, Plaintiffs argue that OB/GYN expertise is irrelevant to evaluating the medical treatment and injury in this case and that, instead, the relevant expertise is in wound care, in which Dr. Greenberg has ample experience. Pls.' Opp'n at 2, 5-6.

When assessing a whether an expert should be permitted to testify, courts look at the totality of the witness' qualifications and must ensure that the issues or subject matters on which the expert opines are within that area of expertise. *Bee v. Novartis Pharms. Corp.*, 18 F. Supp.3d 268, 300 (E.D.N.Y. 2014) (citing *Rosco, Inc. v. Mirror Lite Co.,* 506 F. Supp.2d 137, 144–45 (E.D.N.Y. 2007). While Dr. Greenberg does not practice in OB/GYN, he nonetheless works with surgical bandages "every day" and handles their removal himself. This places the subject matter of post-operative use of surgical bandages and tape firmly within his area of expertise.

The injuries in this case result from the removal of post-surgical bandages and tape. Necessary to, but absent from, Defendant's argument that OB/GYN experience is required, is some support for the proposition that the standard of care for the use of post-surgical bandages and tape is distinct when used to cover a Cesarean section incision, as opposed to another surgical incision, requiring OB/GYN expertise. Thus, despite Defendants' insistence that a witness must have OB/GYN expertise to testify regarding the applicable standard of care in this case, there is nothing about Mendez-Caton's injuries in this case that supports this requirement.

2. **<u>Reliability</u>**

Defendants contend that Dr. Greenberg's conclusions and opinions are unsupported by facts in the record and/or are irrelevant to the issues in the case. USA MIL at 2, 11-20; NYU MIL at 4-7. Plaintiffs oppose, arguing the Dr. Greenberg's opinion and conclusions are reliable and that Defendants may raise their arguments on cross-examination. Pls.' Opp'n at 8-10, 10-12.

Dr. Greenberg testified at length regarding how he formed his opinions regarding the medical treatment in this case. *See*, Greenberg Depo. He discussed why he believes that the initial attempts to remove the surgical tape were negligent. *Id.* at 44-46, 55. He also discussed the basis for his belief that the treatment of the areas where skin had been removed was negligent. *Id.* at 58. In addition to his review of the file materials and the MARSI article, Dr. Greenberg examined Mendez-Caton himself. Greenberg 2d Rep. The Court is satisfied that the preponderance of the evidence shows Dr. Greenberg's report and opinion are the result of the reliable application of his expertise to the facts of the case.

Defendants have not identified any issue with Dr. Greenberg's report or testimony that compels preclusion of his testimony. First, to the extent Defendants argue that Dr. Greenberg's opinions are not based on facts in the record, they may raise these issues on cross-examination. Weaknesses in the foundation for an expert's "opinions 'are fair ground for cross-examination, but they are not a basis for preclusion.'" *Lane v. Am. Airlines, Inc.*, 2024 WL 1200074, at *18 (E.D.N.Y. Mar. 20, 2024) (quoting *Vazquez v. City of New York*, 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014)). Second, to the extent that Defendants argue that Dr. Greenberg's opinions on certain topics are irrelevant, they may object to his testimony on these points. *See*, USA MIL at 17, 18.

Therefore, the Court finds that Dr. Greenberg's testimony meets the requirements of Rule 702. Defendants' motions to preclude Dr. Greenberg's testimony are denied.

## **CONCLUSION**

For the reasons set forth above, the motions *in limine* of the Plaintiffs, the Government, and NYU Defendants are denied.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2024

/s/
DORA L. IRIZARRY
United States District Judge